Enebiene P. IJOMA, Petitioner,

v.

IMMIGRATION AND
NATURALIZATION SERVICE,
Respondent.

No. 4:CV 93–3182.

United States District Court,
D. Nebraska.

Nov. 16, 1993.

Enebiene P. Ijoma, pro se.

Thomas R. Hickey, Omaha, NE, for petitioner.

Paul W. Madgett, U.S. Atty., Omaha, NE, for respondent.

## MEMORANDUM OPINION AND ORDER

KOPF, District Judge.

This matter is before the Court on the Magistrate Judge's Report and Recommendation (filing 18). No objections to such report and recommendation have been filed as allowed by 28 U.S.C. § 636(b)(1)(C) and NELR 72.4.

I have reviewed the Magistrate Judge's Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1) and NELR 72.4 and I find after de novo review that the Report and Recommendation should be adopted. Inasmuch as Judge Piester has fully, carefully and correctly found the facts and applied the law I need only state that this court has jurisdiction to review petitioner's status adjustment application denial and thus respondent's motion to dismiss for lack of jurisdiction must be denied.

IT IS ORDERED that the Magistrate Judge's Report and Recommendation is adopted (filing 18) and respondent's motion to dismiss (filing 16) is denied.

1. In its response to Petitioner's habeas corpus petition, Respondent INS argued, *inter alia*, that this court lacked jurisdiction. This court ordered Respondent to file a motion to dismiss on these grounds in the absence of which such defenses would be deemed waived. Respondent has so filed.

2. Ijoma was admitted to the United States as a nonimmigrant under Section 101(a)(15) of the Immigration and Nationality Act, which requires enrollment at a college or university to maintain admission status.

3. Under 8 U.S.C. § 1255(a), an alien may seek a change in his immigration status from a visitor to a permanent resident. Section 1255(a), Adjustment of status of nonimmigrant inspected and admitted or paroled into United States; Status as person admitted for permanent residence upon application and eligibility for immigrant visa, provides:

> The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

8 U.S.C. § 1255(a). Ijoma's wife presumably filed an immediate relative visa petition in an effort to satisfy subsections (2) and (3) of Section 1225(a).

## MEMORANDUM AND RECOMMENDATION

PIESTER, United States Magistrate Judge.

Respondent has filed a motion to dismiss for lack of jurisdiction in response to a previous order of this court.[1] Liberally construing the allegations of the petition, *Carlson v. State of Minnesota*, 945 F.2d 1026, 1029 (8th Cir.1991) (pro se petitions are to be liberally construed in favor of petitioner), I shall recommend that Respondent's motion to dismiss be denied, and Petitioner's request to have his status adjustment application reviewed by this court be allowed to proceed.

## I. BACKGROUND

Petitioner is a native citizen of Nigeria who entered the United States on August 7, 1982 as a nonimmigrant student.[2] On March 22, 1983, Petitioner married a United States citizen. On August 15, 1983, Petitioner's wife filed an immediate relative visa petition on his behalf. This petition was accompanied by Petitioner's application for adjustment of status to a permanent resident.[3] The Respondent responded by requesting further documentation and initiating an investigation. A child was born to the couple September 3, 1983.

On August 8, 1984, Petitioner pleaded nolo contendere to Insufficient Fund Check in Lancaster County Court, Nebraska, and was

fined $125.00. On February 6, 1985, Petitioner pleaded nolo contendere on No Account Check in the same court, and was fined $100.00. On May 5, 1986, Petitioner was convicted of second offense Insufficient Fund Check and sentenced to a confinement for one year.

On May 26, 1986, Respondent issued an Order to Show Cause why Petitioner should not be deported under Section 241(a)(4) of the Immigration and Nationality Act ("Act"), 8 U.S.C. 241(a)(2)(A)(i).[4] Specifically, the Order alleged that Petitioner's bad check conviction rendered Petitioner deportable under Section 241(a)(4), in that the conviction constituted a crime "involving moral turpitude" within the meaning of the statute, and that he had been sentenced to a year or more for the crime. On October 8, 1986, Petitioner began serving his one year bad check sentence. On June 11, 1987, Petitioner was placed in Respondent custody after completing that sentence.

On June 12, 1987, Petitioner's immediate relative petition submitted by his wife in 1983 was denied by Respondent on the basis that Petitioner's marriage was contracted primarily to obtain immigration benefits. Petitioner did not appeal this determination. On the same day Petitioner's application to adjust status to a permanent resident was also denied by Respondent on the grounds of: 1) no approved visa petition; and 2) Petitioner's inadmissibility based on his Section 241(a)(4) violation based on the bad check conviction. Petitioner alleges that he refiled his application to adjust status to a permanent resident "immediately after this denial." It is not clear from the file the status of this second application.

Deportation proceedings commenced in Omaha, Nebraska, but the case was transferred by a change in venue order August 12, 1987, changing venue to the Immigration Court in Denver, Colorado, as Petitioner had been incarcerated in the Wakanutt [?] Facility maintained by Respondent in Aurora, Colorado. On September 14, 1987, Petitioner's wife filed another immediate relative visa petition on his behalf. It is not clear from the file the status of this second visa petition.

Petitioner's deportation hearing began September 16, 1987. At this time Respondent lodged an additional Order to Show Cause against Petitioner, alleging that he had failed to maintain the conditions of his status as a nonimmigrant as set forth in Section 241(a)(9) of the Act, 8 U.S.C. § 1251(a)(9).[5] The matter went before an immigration judge in Aurora, who rendered a decision dated September 23, 1987. The judge rejected the deportation order based on Section 241(a)(4) (crime involving moral turpitude), finding that the Nebraska statute underlying Petitioner's second offense insufficient fund check conviction lacked the necessary language of allegation and proof of fraudulent intent. *See In the Matter of Ijoma*, File No. A 24 874 499, at 11. However, the judge sustained the deportation order based on Section 241(a)(9) of the Act, finding abundant evidence that while Petitioner had attended "some school" since his admission, he had not remained a full-time student at all times as required by Section 241(a)(9). *See id.* at 11–14. Consequently, Petitioner was adjudicated to be in noncompliance with the conditions under which he was admitted, and the lodge charge for deportation was sustained.

Petitioner appealed to the Board of Immigration Appeals ("BIA") on a number of grounds. The BIA sustained the immigration judge's decision, concluding that Petitioner was deportable under section 241(a)(9) of the Act. Petitioner did not seek review of Respondent's denial of his immediate relative petition or application to adjust status to a permanent resident, and the BIA did not reach the ultimate merits of these denials.

On May 28, 1993, Petitioner filed a petition for writ of habeas corpus in this court. In this initial petition, Petitioner challenged both his denied application for adjustment status to permanent resident and his order of

---

**4.** Section 241(a)(4) of the Act provides for deportation of aliens where the alien has been convicted of a crime "involving moral turpitude" within five years of having after entry, and has received a sentence of a year or more in a prison or corrective institution for that conviction.

**5.** See note 3 supra.

deportation arguing, *inter alia,* that the Respondent lacked sufficient evidence to support a deportation decision. It appears these two actions are intertwined, as Petitioner stated that his application for adjustment to permanent resident status was rejected at least in part on the basis of the bad check conviction underlying his order of deportation.[6] In a later filing, however, Petitioner implies that he is only seeking review of his application for adjustment status to permanent residence, hence his "Motion for Review of Denial of Status Adjustment."

In this court's first memorandum and order I noted that although Petitioner filed his action on a printed 28 U.S.C. § 2254 form, I would consider his claims under § 1105(a), as raised under 28 U.S.C. § 2241 habeas juris-

diction.[7] With respect to his substantive claims, I concluded that he had no right to counsel during his administrative actions, but that Respondent would have to respond to Petitioner's Fifth Amendment and inadequate evidence claims. *See* Filing 6. I appointed Petitioner counsel under 18 U.S.C. § 3006A(a)(2)(B).

 Respondent denied Petitioner's Fifth Amendment and inadequate evidence claims, as well as suggested that this court lacked jurisdiction. First, Respondent argued that Petitioner was not in its custody, but rather the State of Nebraska, citing 8 U.S.C. § 1105a(2).[8] Second, Respondent argued that U.S. Immigration (Omaha office) was not a proper respondent, citing no support or authority.[9] In light of Respondent's

6. An alien has dual opportunities to seek permanent resident status. First, she may apply for relief to "the district director having jurisdiction over his place of residence." 8 C.F.R. § 245.-2(a)(1). Should the alien fail to gain adjustment at this stage, she is entitled to a de novo review of her application in the context of deportation proceedings. *See* 8 C.F.R. §§ 242.17(a), 245.-2(a)(5)(ii). Specifically, "[a]fter an alien has been served with an order to show cause ..., his application for adjustment of status ... shall be considered only in [the deportation] proceedings." 8 C.F.R. § 245.2(a)(5)(ii) (1988). Thus, the alien may obtain full consideration of her status adjustment application in deportation proceedings. *See* 8 C.F.R. §§ 242.17(a), 245.-2(a)(5)(ii); *see also Jain v. INS,* 612 F.2d 683, 689 (2nd Cir.1979) (finding "without merit" argument that alien seeking status adjustment "was denied due process because he was unable to appeal [district director's] denial of his ... application directly and could only do so in the context of deportation proceedings"). At this stage, the alien is accorded a plenary hearing; he has the right to be represented by counsel, to introduce evidence, and to cross-examine. 8 U.S.C. § 1252(b); 8 C.F.R. § 242.16. If the immigration judge rules against the alien, he may appeal to the Board of Immigration Appeals, 8 C.F.R. §§ 236.7, 242.21, and thereafter, by prescription of the Act itself, to a court of appeals. 8 U.S.C. § 1105a(a). The statute sets the venue of a judicial review petition in "the judicial circuit in which the administrative proceedings before a special inquiry officer were conducted ... or in the judicial circuit wherein is the residence ... of the petitioner, but not in more than one circuit[.]" 8 U.S.C. § 1105a(a)(2). I assume that Petitioner's venue is valid in this court in that he is a resident in this circuit.

As such, Petitioner possessed the right to submit his application for adjustment of status for de

novo consideration during his deportation proceedings. There is no evidence that Petitioner did so, however.

7. 8 U.S.C. § 1105a(a) provides an avenue for challenging INS orders of deportation or exclusion.

8. 8 U.S.C. § 1105a(a)(2) addresses appropriate venue for petitions for judicial review of deportation and exclusion orders, providing that:

the venue of any petition for review under this section shall be in the judicial circuit in which the administrative proceedings before a special inquiry officer were conducted in whole or in part, or in the judicial circuit wherein is the residence, as defined in this chapter, of the petitioner, but not in more than one circuit;

8 U.S.C. § 1105a(a)(2). Assuming, arguendo, that Ijoma is indeed seeking review of his deportation order, venue would be appropriate in this court, as Ijoma's deportation proceedings were initiated in this judicial district before a change in venue to Denver was ordered. Additionally, venue would also lie as a consequence of Ijoma's residence. 8 U.S.C. § 1101(a)(33) provides that "[t]he term "residence" means the place of general abode; the place of general abode of a person means his principal, actual dwelling place in fact, without regard to intent." The filings make no suggestion that Ijoma ever resided outside this judicial district until his transfer to Colorado and subsequent change in venue. In any case, it is unclear how this provision has anything to do with the custodial requirement for a habeas action.

9. This argument is meritless. So long as Ijoma is petitioning for judicial review of a deportation or exclusion order within 8 U.S.C. § 1105a, he may do so through a habeas petition, and the INS is a proper respondent. Under 8 U.S.C.

contention of lack of jurisdiction, I ordered that Respondent be given 15 days to file a motion to dismiss on the grounds noted in its response, *viz.*, that Petitioner was not in its custody, but rather the State of Nebraska's, in the absence of which that defense would be waived. Respondent responded by claiming that Respondent had only a detainer lodged against Petitioner, and that Petitioner was not therefore in custody of Respondent. *See* Filing 16.[10] Respondent also argued that while a district court has proper habeas jurisdiction to review certain INS orders and actions, such review is generally limited to matters ancillary to final orders of deportation, rather than such final orders themselves, generally reviewed by a federal court of appeals. *See id.*

Petitioner responded to this court's order by filing a "Motion for Review of Denial of Status Adjustment." *See* Filing 15. In his motion, Petitioner suggests that he was invoking jurisdiction "which may be seperate [sic] from the Habeas Corpus Petition" he had originally filed, apparently in response to Respondent' suggestion that it was not a proper habeas respondent. Petitioner then requested that the court "review[ ] the denial of Application for status adjustment to that Permanent Resident Alien." Petitioner then cited a number of decisions in support of the general proposition that a district court had

jurisdiction to review a denial of status adjustment.

## II. DISCUSSION

### A. PROPER FEDERAL FORUM

██ Federal court of appeal review of a BIA decision is limited to issues within the jurisdiction of the BIA; only the order of deportation and the issue of deportability fall under such jurisdiction, not ancillary matters such as a status adjustment application. *Conti v. I.N.S.*, 780 F.2d 698, 702 (7th Cir. 1985) (citing *Cheng Fan Kwok v. INS*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); 8 U.S.C. § 1105a (§ 106 of the Act)); *Wellington v. I.N.S.*, 710 F.2d 1357, 1360 (8th Cir.1983). District courts have jurisdiction to review such ancillary decisions, however, even if such determinations will effectively control whether or not a given alien will be deported. *Randall v. Meese*, 1987 WL 12570, at *4 (D.D.C.1987), *aff'd* by *Randall v. Meese*, 854 F.2d 472, 272 (D.C.Cir.1988), *cert. denied, Randall v. Thornburgh*, 491 U.S. 904, 109 S.Ct. 3186, 105 L.Ed.2d 694 (1989) (citing *Horta–Ruiz v. United States Department of Justice Immigration and Naturalization Service*, 635 F.Supp. 1039, 1040 (S.D.N.Y. 1986); *Tooloee v. Immigration and Naturalization Service*, 722 F.2d 1434, 1437 (9th Cir.1983)).

██ Although ordinarily ancillary and thus not subject to court of appeals review, an

---

§ 1105a(a)(10), "any alien held in custody pursuant to an order of deportation may obtain judicial review thereof by habeas corpus proceedings." With respect to the INS as respondent,

> the action shall be brought against the Immigration and Naturalization Service, as respondent. Service of the petition to review shall be made upon the Attorney General of the United States and upon the official of the Immigration and Naturalization Service in charge of the Service district in which the office of the clerk of the court is located. The service of the petition for review upon such official of the Service shall stay the deportation of the alien pending determination of the petition by the court, unless the court otherwise directs or unless the alien is convicted of an aggravated felony, in which case the Service shall not stay the deportation of the alien pending determination of the petition of the court unless the court otherwise directs;

8 U.S.C. § 1105a(a)(3).

10. Although there is substantial judicial authority that the mere lodging of a detainer does not vest the INS with the requisite physical custody necessary to grant the habeas corpus relief, see *Roldan v. Racette*, 984 F.2d 85, 87–88 (2d Cir. 1993) (collecting cases), the INS did not merely lodge a detainer against Ijoma. On June 11, 1987, after Ijoma's release from state incarceration, the file indicates that Ijoma was placed in actual INS custody. If INS disputes this it should provide factual allegations to the contrary. Where an order of deportation is outstanding, the "custody" requirement for habeas corpus jurisdiction is satisfied. *United States ex rel. Parco v. Morris*, 426 F.Supp. 976, 978 (E.D.Pa.1977) (citing 8 U.S.C. § 1252(d); *United States ex rel. Marcello v. District Director of INS*, Civil No. 76–957 (E.D.La., June 1976); *Varga v. Rosenberg*, 237 F.Supp. 282 (S.D.Cal.1964); *see generally* "Developments in the Law Federal Habeas Corpus," 83 Harv.L.Rev. 1038, 1238–59 (1970)).

alien's status adjustment application[11] may come within BIA jurisdiction in the context of the deportation proceeding, "since the ability to present an adjustment of status application to an immigration judge under Section 245(a) of the Act ... requires that an immigration visa be presently available." *Conti*, 780 F.2d at 207 n. 7. As such, the status adjustment application, if properly raised for de novo review once deportation proceedings have commenced, would be part of the deportation order and as such reviewable exclusively by the court of appeals under 8 U.S.C. § 1105a(a). *See id.* (citing *De Figueroa v. INS*, 501 F.2d 191, 193 (7th Cir. 1974)).

■ Petitioner, however, did not seek de novo review of Respondent's denial of his immediate relative petition or application to adjust status to a permanent resident once his deportation proceedings began, and the INS judge and subsequent BIA appeal decision did not reach the ultimate merits of these denials. Consequently, Petitioner's status adjustment application is not part of his deportation order, and federal court of appeal review is unavailable. Rather, Petitioner's proper forum is the district court. I note that since Ijoma is not requesting review of a deportation or exclusion order within 8 U.S.C. § 1105a,[12] respondent INS' argument that Ijoma's request is time-barred by 8 U.S.C. § 1105a(a)(1) is misplaced.[13].

Petitioner thus finds himself in the following position: although Petitioner received an administrative review of his deportation proceedings, his denied status adjustment application did not receive de novo review due to his failure to raise the claim when deportation proceedings commenced. Ijoma has no remaining administrative relief with respect to his status adjustment application, and ju-

dicial review at the court of appeals is unavailable since that application cannot properly be considered part of his deportation proceedings and thus reviewable by the court of appeals. Moreover, even assuming court of appeals reviewability, Ijoma would be time-barred from raising his claim.[14] Petitioner's fate thus rests with where this court finds jurisdiction over his claim, if anywhere.

## B. FEDERAL DISTRICT COURT JURISDICTION

■ Petitioner initially filed his claim as a habeas petition. Habeas corpus is an appropriate procedure to review the denial of discretionary relief from deportation where deportability itself is not in issue. *See United States ex rel. Parco v. Morris*, 426 F.Supp. 976, 978 (E.D.Pa.1977) (citing *Foti v. INS*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963)); *United States ex rel. Accardi v. Shaughnessy*, 347 U.S. 260, 74 S.Ct. 499, 98 L.Ed. 681 (1954).

■ As noted above, in its initial response to Petitioner's petition, Respondent suggested that this court lacked jurisdiction. First, Respondent argued that Petitioner was not in its custody, but rather the State of Nebraska, citing 8 U.S.C. § 1105a(a)(2). Second, Respondent argued that U.S. Immigration (Omaha office) was not a proper respondent, citing no support or authority. Respondent's response to this court's order to file a motion to dismiss on these grounds claimed that Respondent had only a detainer lodged against Petitioner, and that Petitioner was not therefore in custody of Respondent. *See* Filing 16. I need not address these challenges to Petitioner's habeas jurisdiction because I find that an alternative basis for jurisdiction is applicable to Petitioner's claim.

11. See note 3 supra.

12. Again, this is not entirely clear from Ijoma's initial habeas petition and subsequent filings. Perhaps you should grant Ijoma leave to amend his petition clarifying whether he is in fact seeking review of his status adjustment application rather than his order of deportation. If the latter, Ijoma is time-barred and no jurisdiction to review the order exists and dismissal would be appropriate. See note 11 and accompanying text infra.

13. 8 U.S.C. § 1105a(a)(1) provides that "a petition for review may be filed not later than 90 days after the date of the issuance of the final deportation order." Ijoma's deportation order was issued December 26, 1991, the date of the order of the BIA decision. Ijoma filed his habeas action May 28, 1993, well beyond this limit.

14. See notes 11–12 and accompanying text supra.

As noted above, 8 U.S.C. § 1105a(a) provides an avenue for challenging INS orders of deportation or exclusion. It is not entirely clear whether Petitioner is in fact seeking judicial review of such an order, rather than Respondent's denial of his application for permanent resident status under 8 U.S.C. § 1255(a). If Petitioner is in fact seeking review under § 1105a(a), his action is time-barred.[15] If Petitioner is instead seeking review of Respondent's action under 8 U.S.C. § 1255(a), however, an alternative basis for jurisdiction with no such time limit must be found.

Although not directly on point, a useful discussion of district court jurisdiction is presented in *Nasan v. Immigration & Naturalization Service*, 449 F.Supp. 244 (N.D.Ill. 1978). In *Nasan*, an Israeli citizen filed suit seeking review of an Respondent decision denying his application to adjustment in status from that of a nonimmigrant visitor for pleasure to that of a permanent resident. On defense motions to dismiss or, in the alternative, for summary judgment, the district court held that: (1) under the federal question statute and under provision of the Immigration and Nationality Act giving the federal district courts "jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter," the district court, despite the absence of an ancillary deportation order, had jurisdiction to review the discretionary denial of adjustment in plaintiff's status. The analysis of *Nasan* finding federal district court jurisdiction is instructive:

> [T]he regulatory framework and statutory provisions of the Immigration and Nationality Act provide a method for review of a discretionary denial of adjustment in status. The regulations provide that:
>
>> [n]o appeal shall lie from the denial of an application (for adjustment in status) by the district director but such denial shall be without prejudice to the alien's right to renew his application in proceedings under Part 242 of this chapter.
>
> 8 C.F.R. § 245.2(a)(4) (1977).
>
> Part 242, entitled Proceedings to Determine Deportability of Aliens in the United States: Apprehension, Custody, Hearing and Appeal, consists of regulatory procedures governing deportation proceedings. Accordingly, if deportation proceedings had been initiated against plaintiff, the denial of the application for adjustment in status could have been raised, once again, for review by the immigration authorities. If a final order of deportation were entered, plaintiff could then obtain review of the order denying him adjustment in status, along with the deportation order, in the court of appeals. *See Cheng Fan Kwok v. Immigration and Naturalization Service*, 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968); *Foti v. Immigration and Naturalization Service*, 375 U.S. 217, 84 S.Ct. 306, 11 L.Ed.2d 281 (1963); Section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a). Deportation proceedings have not been initiated by the Immigration and Naturalization Service and this clear method of review is not available to plaintiff in the circumstances of this case. Thus, the difficult issue is whether, in the absence of such an order, this court has jurisdiction to review the discretionary denial of adjustment in status.

. . . . .

Although none of the cases cited by plaintiff directly support his claim of jurisdiction, this court holds that it has jurisdiction of this cause under Section 279 of the Immigration and Nationality Act, 8 U.S.C. § 1329, and 28 U.S.C. § 1331. The federal question statute provides that

> [t]he district courts shall have original jurisdiction of all civil actions wherein the matter in controversy exceeds the sum or value of $10,000, exclusive of interest and costs, and arises under the Constitution, laws, or treaties of the United States except that no such sum or value shall be required in any such action brought against the United States, any agency thereof, or any officer or employee thereof in his official capacity.

28 U.S.C. § 1331(a).

---

15. See id.

Section 279 of the Immigration and Nationality Act, 8 U.S.C. § 1329, provides that

> (t)he district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter.

The subchapter alluded to in this section encompasses, *inter alia,* provisions dealing with deportation, and adjustment in status under Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255.

Section 279 of the Immigration and Nationality Act is a broad jurisdictional provision conferring jurisdiction in a district court over a wide variety of immigration actions. *See, e.g., Stokes v. United States, Immigration & Nat. Serv.,* 393 F.Supp. 24, 27 (S.D.N.Y.1975); *Ming v. Marks,* 367 F.Supp. 673 (S.D.N.Y.1973), aff'd, 505 F.2d 1170 (2d Cir.1974), cert. denied, 421 U.S. 911, 95 S.Ct. 1564, 43 L.Ed.2d 776 (1975); *Buckley v. Gibney,* 332 F.Supp. 790 (S.D.N.Y.1971), aff'd, 449 F.2d 1305 (2d Cir.1971), *cert. denied,* 405 U.S. 919, 92 S.Ct. 946, 30 L.Ed.2d 789 (1972). Some courts by dicta indicate that a district court acting pursuant to Section 279 of the Immigration and Nationality Act has jurisdiction to review a denial of discretionary relief collateral to a deportation order, where the deportation itself is not challenged. *See, e.g., United States ex rel. Parco v. Morris,* 426 F.Supp. 976, 978 n. 4 (E.D.Penn.1977). The government has on occasion argued that a district court has jurisdiction under Section 279 of the Immigration and Nationality Act to review the Service's denial of an adjustment in status under Section 245 of the Immigration and Nationality Act, 8 U.S.C. § 1255, conceding and contending that the issues raised in such a review are collateral to any subsisting deportation order. *See Manarolakis v. Coomey,* 416 F.Supp. 532, 534 n. 1 (D.Mass.1976), where the court held that it had jurisdiction to review an action based on Section 245 of the Immigration and Nationality Act, pursuant to Section 279 of

the Immigration and Nationality Act, 8 U.S.C. s 1329.

The broad grant of jurisdiction contained in this section is not otherwise circumscribed by Section 106(a) of the Immigration and Nationality Act, 8 U.S.C. § 1105a(a), the provision vesting exclusive jurisdiction over deportation matters in courts of appeal. Thus, this court concludes that it has jurisdiction over this cause under Section 279 of the Immigration and Nationality Act, 8 U.S.C. § 1329 and 28 U.S.C. § 1331(a). This conclusion is supported by the observation in *Cheng Fan Kwok v. Immigration and Naturalization Service,* that

> (i)n situations to which the provisions of s 106(a) (8 U.S.C. s 1105a) are inapplicable, the alien's remedies would, of course, ordinarily lie first in an action brought in an appropriate district court.

392 U.S. at 210, 88 S.Ct. at 1973. *Nasan,* 449 F.Supp. at 246, 247.[16]

Under *Nasan* and the authority cited therein, this court has jurisdiction over Petitioner's status adjustment application denial under 8 U.S.C. § 1329 and 28 U.S.C. § 1331(a). As such, Respondent's motion to dismiss should be denied, and Petitioner's request to have his status adjustment application reviewed by this court be allowed to proceed.

IT THEREFORE HEREBY IS RECOMMENDED to the Honorable Richard G. Kopf, United States District Judge, pursuant to 28 U.S.C. § 636(b)(1)(B) that Respondent's motion to dismiss be denied.

Respondent is notified that unless objection is made within ten days after being served with a copy of this recommendation, Respondent may be held to have waived any right Respondent may have to appeal the court's order adopting this recommendation.

Dated October <u>20</u>, 1993.

---

16. *See also Galvez v. Howerton,* 503 F.Supp. 35, 38 (C.D.Cal.1980) (citing *Nasan); Pascual v. O'Shea,* 421 F.Supp. 80, 82 (D.Haw.1976) (district court has jurisdiction under 8 U.S.C. § 1329 and under 5 U.S.C. §§ 702, 704 and 706 to review petition to classify her adopted child as an "immediate relative" pursuant to 8 U.S.C. § 1151(b)).