Debra A. HOWELL, Plaintiff–Appellant,

v.

**IMMIGRATION AND NATURAL-
IZATION SERVICE, Defen-
dant–Appellee.**

No. 1688.
Docket 94–6306.

United States Court of Appeals,
Second Circuit.

Argued Aug. 7, 1995.

Decided Dec. 20, 1995.

Irving Edelman, New York City, for Plaintiff–Appellant.

Scott A. Dunn, Assistant United States Attorney, Brooklyn, NY (Zachary W. Carter, United States Attorney for the Eastern District of New York, Deborah B. Zwany, Assistant United States Attorney, of counsel), for Defendant–Appellee.

Before MINER, WALKER and PARKER, Circuit Judges.

MINER, Circuit Judge:

Plaintiff-appellant Debra A. Howell appeals from a judgment entered in the United States District Court for the Eastern District of New York (Weinstein, J.) dismissing plaintiff's complaint. The district court found that it lacked subject matter jurisdiction to review the district director's denial of Howell's application for adjustment of status pursuant to 8 U.S.C. § 1255. For the reasons that follow, we affirm the judgment of the district court.

## BACKGROUND

On August 8, 1992, Howell, a citizen of Jamaica, used the passport and identity of another person, Sadie Dennis, to enter the United States. Howell is the alien spouse of a United States citizen. On March 31, 1993, a Form I–130 petition was filed on Howell's behalf with the Immigration and Naturalization Service ("INS"), seeking to classify her as an immediate relative. On the same day, Howell filed an I–485 application for adjustment of her status to that of a permanent resident. She also filed a Form I–601 application for a waiver of excludability in order to request that the INS waive, as a ground of inadmissibility, the fact that she fraudulently entered the United States.

On December 13, 1993, INS District Director William S. Slattery of the New York District (the "district director") approved Howell's petition for classification as an immediate relative. However, he denied Howell's application for adjustment of status. The district director found that Howell had not presented "evidence to prove ... that she was the one that was inspected on August 8, 1992, as required." He stated that she had not "submitted any credible evidence to establish that she was the person who presented the passport and nonimmigrant visa of Sadie Dennis to an Immigration Inspector on August 8, 1992." The district director also denied Howell's application for a waiver of excludability for the same reasons. He granted Howell until January 13, 1994 to depart voluntarily from the United States.

Howell, nonetheless, did not depart from the United States, and, on January 31, 1994, she filed a complaint in the district court, seeking, *inter alia,* review of the district director's denial of her application for adjustment of status. On February 24, 1994, the INS sent a Form I–72 letter to Howell, requesting that she provide the INS with information regarding her application. Howell did not respond to the letter.

The INS moved to dismiss Howell's complaint, contending in a Memorandum of Law dated August 23, 1994 that the district court "lack[ed] jurisdiction to review the INS's denial of [Howell's] application because she [had] failed to exhaust her administrative remedies." Howell opposed the INS's motion to dismiss, arguing in a Memorandum of Law dated September 20, 1994, *inter alia,* that under the Supreme Court's decision in *Darby v. Cisneros,* —— U.S. ——, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), she was not required to exhaust her administrative remedies in order to obtain district court review of the district director's denial of her application for adjustment of status.

■ On October 19, 1994, the INS sent Howell a Form G–56 Call–In Notice, directing her to come to the INS for an interview, but again Howell did not respond. On October 28, the INS served on Howell an Order to Show Cause why she should not be deported.[1] The INS, however, did not file the Order to Show Cause with the Office of the Immigration Judge, and, therefore, deportation proceedings against Howell did not commence at that time.[2]

1. The INS served the Order to Show Cause on Howell at her last known address by certified mail, return receipt requested, and sent a copy to her attorney. Howell contends that she was not served properly because the Order to Show Cause was sent to the wrong address. However, the INS sent the Order to Show Cause to the address she furnished to the INS, and this constitutes proper service. *See* 8 C.F.R. § 103.5a(a)(2) (personal service may consist of "[m]ailing a copy by certified or registered mail, return receipt requested, addressed to a person at his last known address").

2. Under 8 C.F.R. § 242.1(a), "[e]very proceeding to determine the deportability of an alien in the

In a letter dated October 28, 1994, the INS responded to Howell's Memorandum of Law opposing the INS's motion to dismiss. The INS argued that the Supreme Court's decision in *Darby* did not require that the district court review the district director's denial of Howell's application for adjustment of status because she had the opportunity to renew her application during deportation proceedings. In an Order and Judgment dated November 16, 1994, the district court granted the INS's motion and dismissed Howell's complaint "for the reasons set forth in [the INS's] Memorandum of Law and in [the INS's] October 28, 1994 letter to the Court." On December 1, 1994, Howell filed a Notice of Appeal.

On March 9, 1995, the INS discovered that it had not filed the Order to Show Cause with the Office of the Immigration Judge. Accordingly, on that date, the INS filed the Order to Show Cause with the Office of the Immigration Judge, as required under 8 C.F.R. § 242.1(a) for the commencement of deportation hearings, and the Order to Show Cause again was sent to Howell at her last known address and to her attorney.[3]

## DISCUSSION

### 1. *Adjustment of Status*

■ Under § 245 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1255:

The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of

United States ... is commenced by the filing of an order to show cause with the Office of the Immigration Judge."

3. The INS argues that Howell is a fugitive from justice, and should not be allowed to seek relief from this court, since she "failed to appear [before the INS] as required and currently remains at large." *See Bar–Levy v. United States Dep't of Justice,* 990 F.2d 33 (2d Cir.1993) (holding that an alien who had failed to surrender for deportation was a "fugitive from justice" and was barred as a result of his fugitive status from calling upon the resources of the court to examine his claims). In view of our disposition of this appeal, we do not address that argument.

an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

Since § 1255 allows an alien to apply for permanent residence status in the United States rather than requiring him to return to his own country to apply for such status, its provision for adjustment of status "is considered to be extraordinary relief." *Jain v. INS*, 612 F.2d 683, 687 (2d Cir.1979), *cert. denied*, 446 U.S. 937, 100 S.Ct. 2155, 64 L.Ed.2d 789 (1980).

Pursuant to the regulations promulgated under § 1255, an alien seeking adjustment of status applies to the "director having jurisdiction over his place of residence." 8 C.F.R. § 245.2(a)(1). If the director denies the alien's application, "[n]o appeal lies from the denial of an application by the director, but the applicant retains the right to renew his or her application in [deportation] proceedings." 8 C.F.R. § 245.2(a)(5)(ii). In addition, 8 C.F.R. § 245.2(a)(1) provides that "[a]fter an alien has been served with an order to show cause or warrant of arrest, his application for adjustment of status ... shall be made and considered only in [deportation] proceedings."

Deportation proceedings are "commenced by the filing of an order to show cause with the Office of the Immigration Judge." 8 C.F.R. § 242.1(a). During the proceedings, the alien is given a plenary hearing and has the right to be represented by counsel, to cross-examine, and to introduce evidence. 8 C.F.R. § 242.16. If the immigration judge rules against the alien, then the alien may appeal to the Board of Immigration Appeals. 8 C.F.R. § 242.21. An unfavorable decision by the Board of Immigration Appeals may be appealed to a circuit court of appeals. 8 U.S.C. § 1105a(a)(2) (providing that the venue for judicial review of deportation orders "shall be in the judicial circuit in which the administrative proceedings before a special inquiry officer were conducted").

### 2. Exhaustion of Administrative Remedies

 Under the doctrine of exhaustion of administrative remedies, "a party may not seek federal judicial review of an adverse administrative determination until the party has first sought all possible relief within the agency itself." *Guitard v. United States Secretary of Navy*, 967 F.2d 737, 740 (2d Cir. 1992) (citing *Myers v. Bethlehem Shipbuilding Corp.*, 303 U.S. 41, 50–51, 58 S.Ct. 459, 463–64, 82 L.Ed. 638 (1938)). The requirement of exhaustion "may arise from explicit statutory language or from an administrative scheme providing for agency relief." *Kennedy v. Empire Blue Cross & Blue Shield*, 989 F.2d 588, 592 (2d Cir.1993). If a party fails to exhaust administrative remedies, then the court may dismiss the action because subject matter jurisdiction does not exist. *DiLaura v. Power Auth.*, 982 F.2d 73, 79 (2d Cir.1992).

 There are, however, established exceptions to the exhaustion rule. "Exhaustion of administrative remedies may not be required when: (1) available remedies provide no genuine opportunity for adequate relief; (2) irreparable injury may occur without immediate judicial relief; (3) administrative appeal would be futile; and (4) in certain instances a plaintiff has raised a substantial constitutional question." *Guitard*, 967 F.2d at 741 (internal quotations omitted).

 Also, the Supreme Court's decision in *Darby v. Cisneros*, ——— U.S. ———, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993), has placed additional limitations on the requirement for the exhaustion of administrative remedies. In *Darby*, the Supreme Court held that federal courts do not have the authority to require a plaintiff to exhaust administrative remedies before seeking judicial review under the APA, where neither the relevant statute nor agency rules specifically mandate exhaustion as a prerequisite to judicial review. *Id.* at ———, 113 S.Ct. at 2548.

### 3. Application of Exhaustion Requirement to Adjustment of Status

Howell contends that the district court has subject matter jurisdiction to review the district director's denial of her application for adjustment of status. The INS argues that

Howell has failed to exhaust her administrative remedies, and therefore the district court may not review the district director's decision. Although we have not previously addressed this issue, other courts have reached different conclusions as to whether a district court has jurisdiction to review a district director's denial of an alien's application for adjustment of status.

Several courts have held that district courts have jurisdiction to review a district director's denial of adjustment of status. *See, e.g., Jaa v. United States INS,* 779 F.2d 569 (9th Cir.1986) (holding that district court had jurisdiction to review denial of adjustment of status); *Ijoma v. INS,* 854 F.Supp. 612 (D.Neb.1993) (same); *Reid v. INS,* No. 91 Civ. 6535, 1993 WL 267278 (S.D.N.Y. Nov. 7, 1993) (same). These courts largely have relied on the Supreme Court's decision in *Cheng Fan Kwok v. INS,* 392 U.S. 206, 88 S.Ct. 1970, 20 L.Ed.2d 1037 (1968). The Court in *Cheng Fan Kwok* held that the judicial review provisions of § 106(a) of the INA, codified at 8 U.S.C. § 1105a, "embrace only those determinations made during a [deportation] proceeding." *Id.* at 216, 88 S.Ct. at 1976. The Court stated that "[i]n situations to which the provisions of § 106(a) are inapplicable, the alien's remedies would, of course, ordinarily lie first in an action brought in an appropriate district court." *Id.* at 210, 88 S.Ct. at 1973. Accordingly, since adjustment of status decisions by district directors occur outside of deportation hearings and do not fall under § 106(a) of the INA, some courts have concluded that district courts have jurisdiction under 8 U.S.C. § 1329 to review the denial of an alien's application for adjustment of status.[4] *See Jaa,* 779 F.2d at 571; *Ijoma,* 854 F.Supp. at 619; *Reid,* 1993 WL 267278, at *3.

We do not think, however, that *Cheng Fan Kwok* directly addresses whether district courts have jurisdiction to review a district director's denial of an application for adjustment of status. The Supreme Court in *Cheng Fan Kwok* held that when a district director denies a stay of deportation, judicial review is available and ordinarily lies first in district court rather than in a circuit court of appeals. *See id.* at 210, 88 S.Ct. at 1973. However, the Court did not address the specific question at issue here—whether a district director's denial of adjustment of status may be reviewed in district court. *See Randall v. Meese,* 854 F.2d 472, 482 n. 16 (D.C.Cir.1988) (stating that even after *Cheng Fan Kwok,* "the reviewability of district director status adjustment decisions is unsettled" and "the Supreme Court has not yet grappled with the question whether, outside the context of a deportation proceeding or order, district director status adjustment or asylum application denials are amenable to court review") (emphasis omitted), *cert. denied,* 491 U.S. 904, 109 S.Ct. 3186, 105 L.Ed.2d 694 (1989). Thus, we do not think that *Cheng Fan Kwok* requires us to conclude that district courts have jurisdiction to review a district director's denial of an alien's application for adjustment of status.

Indeed, several other courts have found that district courts lack jurisdiction to review a district director's denial of adjustment of status. *See, e.g., Randall,* 854 F.2d at 472 (holding that action to review director's denial of adjustment of status was premature, under circumstances where deportation proceedings had commenced and appeal was pending before Board of Immigration Appeals); *Massignani v. INS,* 438 F.2d 1276 (7th Cir.1971) (holding that district court properly declined to exercise jurisdiction because claim was not ripe for judicial review, even though deportation proceedings had not yet commenced); *Rahman v. McElroy,* 884 F.Supp. 782 (S.D.N.Y.1995) (finding that alien's failure to exhaust administrative remedies precluded district court from reviewing director's denial of adjustment of status). The D.C. Circuit and the Seventh Circuit recognized that requiring an alien to utilize available administrative remedies will allow a full record to develop concerning the alien's application for adjustment of status. *See Randall,* 854 F.2d at 482 (stating that requiring alien to "take 'the normal appeal route'" will "assure that eventual court review will

---

**4.** Section 1329 provides that "[t]he district courts of the United States shall have jurisdiction of all causes, civil and criminal, arising under any of the provisions of this subchapter." The subchapter referred to includes adjustments of status under 8 U.S.C. § 1255.

be enlightened by a full record, including the Board of Immigration Appeals' decision, and that this court avoids premature blockage of, or interference with, regulatory actions Congress has assigned to other government bodies"); *Massignani,* 438 F.2d at 1278 (stating that judicial review "should await the conclusion of the deportation proceedings ... after which there will be a complete and adequate record for [the circuit] court to review").

■ In the present case, we think that the district court lacked jurisdiction to review the district director's denial of Howell's application for adjustment of status once deportation proceedings commenced, because she failed to exhaust her administrative remedies.[5] This exhaustion requirement arises as a result of the administrative remedies available to Howell pursuant to the statutory and regulatory schemes involving adjustment of status. *See Kennedy,* 989 F.2d at 592. Because deportation proceedings have commenced, Howell has the opportunity, pursuant to the regulations, to renew her application for adjustment of status before an immigration judge. Thus, Howell must pursue these remedies rather than seek review in the district court pursuant to § 1329.

■ Furthermore, none of the exceptions to the exhaustion requirement apply in Howell's case. First, Howell cannot claim that she lacks a genuine opportunity for adequate relief, since she may renew her application for adjustment of status in the deportation proceedings. We previously have held that the opportunity to apply and then have "a de novo review of [the] application in the context of deportation proceedings" provides "ample process, particularly in light of the discretionary nature of section 245 relief." *Jain,* 612 F.2d at 690. "The fact that the second consideration of the application takes place within the context of a deportation proceeding is irrelevant." *Id.*

In addition, requiring Howell to renew her application for adjustment of status before an immigration judge at the deportation proceedings rather than allowing immediate review in district court will not cause irrepara-

ble injury to her. Moreover, administrative appeal will not be futile, since if the immigration judge approves Howell's application for adjustment of status at the deportation proceedings, she will have had an adequate remedy. Finally, Howell has not raised any "substantial constitutional question" that would warrant an exception to the exhaustion requirement.

■ We also think that *Darby* does not limit the requirement of exhaustion of administrative remedies in the present case. At the outset, the INS argues that the APA is not applicable to the present proceedings under *Ardestani v. INS,* 502 U.S. 129, 112 S.Ct. 515, 116 L.Ed.2d 496 (1991). In *Ardestani,* however, the Supreme Court held only that the provisions of the INA supplant the APA in deportation proceedings. *Id.* at 133, 112 S.Ct. at 518. (citing *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 (1955)); *see also Hashim v. INS,* 936 F.2d 711, 713 (2d Cir.1991) (stating that the Supreme Court has "explicitly held that the APA does not apply to deportation proceedings"), *cert. denied,* 502 U.S. 1029, 112 S.Ct. 866, 116 L.Ed.2d 772 (1992). The Supreme Court in *Ardestani* referred only to deportation proceedings, and did not hold that the APA is inapplicable to decisions made outside the scope of deportation proceedings such as district directors' decisions regarding adjustment of status. Nonetheless, even assuming that the APA applies in the present case, agency regulations specifically identify the administrative remedies for Howell to pursue. *See* 8 C.F.R. § 245.2(a)(5)(ii) ("No appeal lies from the denial of an application by the director, but the applicant retains the right to renew his or her application in [deportation] proceedings...."). Therefore, the limitations on the requirement for exhaustion of remedies stated in *Darby* do not apply to this case. *See Ciba–Geigy Corp. v. Sidamon–Eristoff,* 3 F.3d 40, 45 n. 4 (2d Cir.1993) (distinguishing agency rules that identify additional exhaustion requirements from the judge-made doctrine involved in *Darby*).

---

**5.** Since deportation proceedings have commenced in this case, we do not reach the question of whether a district court possesses subject matter jurisdiction pursuant to § 1329 to review a district director's denial of adjustment of status when such proceedings have not yet commenced.

Since *Darby* and the exceptions to the exhaustion requirement do not apply, Howell was required to exhaust her administrative remedies once deportation proceedings commenced, instead of directly seeking review in the district court. Because Howell did not pursue these remedies, the district court lacked jurisdiction to review the district director's denial of her application for adjustment of status.

## CONCLUSION

In view of the foregoing, we affirm the judgment of the district court.

WALKER, Circuit Judge, concurring:

I concur in the result based upon my conclusion that the case is not ripe for judicial review, not on the majority's reasoning that exhaustion of remedies applies. In my view, the regulation to which the majority cites, 8 C.F.R. § 245.2(a)(5)(ii), does not satisfy the requirements of *Darby v. Cisneros,* —— U.S. ——, 113 S.Ct. 2539, 125 L.Ed.2d 113 (1993). There, the Supreme Court held that under the APA the doctrine of exhaustion applies *"only* when expressly required by statute or when an agency rule requires appeal before [judicial] review and the administrative action is made inoperative pending that review." *Id.* at ——, 113 S.Ct. at 2548. Writing for the Court, Justice Blackmun noted that the APA "has limited the availability of the doctrine of the exhaustion of administrative remedies to that which the statute or rule clearly mandates." *Id.* at ——, 113 S.Ct. at 2544. Section 245.2(a)(5)(ii) only states that "[n]o appeal lies from the denial of an application by the director, but the applicant retains the right to renew his or her application in [deportation proceedings]." I read this language as simply spelling out the appeal procedures that are available to an alien within the INS. I do not think that it satisfies the stringent requirements that *Darby* placed upon agencies that seek to condition judicial review upon exhaustion of remedies.

Although in my view exhaustion is not required, I believe that the issue presented in this case is not ripe for judicial review. *See Abbott Laboratories v. Gardner,* 387 U.S.

136, 148–49, 87 S.Ct. 1507, 1515–16, 18 L.Ed.2d 681 (1967); *Occidental Chem. Corp. v. FERC,* 869 F.2d 127, 129 (2d Cir.1989). Once deportation proceedings have begun there will be no direct and immediate impact until after the final decision in the deportation proceedings, judicial review would interfere with the INS's adjudication process, the factual record has not been fully developed, and there is no final agency action. Therefore, I concur in the result on the ground that, once deportation proceedings began and until they are completed, Howell's case is not ripe for judicial review. *See Massignani v. INS,* 438 F.2d 1276, 1277–78 (7th Cir.1971) (per curiam).