**Milton D. NELSON, Plaintiff,**

v.

**Janet RENO, et al., Defendant.**

**No. 00–4276–Civ.**

United States District Court, S.D. Florida.

April 29, 2002.

**1356**

Ira Jay Kurzban, Kurzban Kurzban Weinger & Tetzeli, Miami, FL, for plaintiff.

Dexter Lee, Assistant U.S. Attorney, Miami, FL, for defendant.

### *ORDER*

K. MICHAEL MOORE, District Judge.

THIS CAUSE came before the Court upon Defendant's Motion for Summary Judgment (DE # 17).

UPON CONSIDERATION of the motion, memoranda filed in support and opposition thereof, materials submitted, the pertinent portions of the record, and being otherwise fully advised in the premises, the Court enters the following Order.

### Factual Background

Plaintiff, Milton D. Nelson, is a native and citizen of Jamaica. In December 1996, Mr. Nelson entered the United States as a non-immigrant visitor. Thereafter, in April 1997, Mr. Nelson married Diana Bent, a United States citizen. In May 1997, Mr. and Mrs. Nelson took steps in an effort to secure Mr. Nelson's status as a lawful permanent resident of the United States. Specifically, Mrs. Nelson submitted to the Immigration and Naturalization Service ("INS") a Petition of Alien Relative (I–130). Likewise, Mr. Nelson submitted to INS an Application to Register Permanent Residence or Adjust Status (I–485).

In February 1998, Mr. and Mrs. Nelson, along with counsel David Phillips, presented themselves to INS District Adjudications Officer Edward Persons in Miami for an interview and review of the I–130 and I–485. While the parties disagree as to whether this interview was a "marriage interview," there is no dispute that upon completion of the interview, Mr. Persons did not place an approval stamp on the appropriate block of either the I–130 or the I–485. Nor did Mr. Persons, or any other authorized INS official, sign, initial or otherwise note approval on either application. While a Memorandum of Creation

of Record of Lawful Permanent Residence (Form I–181) was apparently prepared and placed in Mr. Nelson's file at some point during this process, that document is also void of any stamp or other mark signifying approval by the INS

On November 12, 1998, Mr. Nelson returned to the INS office in Miami. At that time, INS District Adjudications Officer Persons placed an I–551 stamp in Mr. Nelson's passport. That stamp and its legal significance are the focal point of this case.

On January 7, 1999, Mrs. Nelson withdrew the I–130 petition that she previously filed on behalf of her husband. Subsequently, Mr. Persons requested, through Mr. Nelson's counsel, that Mr. Nelson appear at INS' Miami office with his passport. Upon Mr. Nelson's arrival at INS in April 1999, Mr. Persons took Mr. Nelson's passport and voided the I–551 stamp that he had placed on the passport in November 1998. Thereafter, on March 9, 2000, the INS issued a written denial of Mr. Nelson's application for status as a permanent resident.

Mr. Nelson brought suit in November 2000 against INS, the United States Department of Justice, and three individuals in their official government capacities. He asserts that his rights were violated where the defendants acted in contravention of the Administrative Procedures Act, the Immigration and Nationality Act, and United States Constitution.

### Summary Judgment Standard

The applicable standard for reviewing a summary judgment motion is unambiguously stated in Rule 56(c) of the Federal Rules of Civil Procedure:

The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Summary judgment may be entered only where there is no genuine issue of material fact. *See Twiss v. Kury,* 25 F.3d 1551, 1554 (11th Cir.1994). The moving party has the burden of meeting this exacting standard. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). An issue of fact is "material" if it is a legal element of the claim under the applicable substantive law which might affect the outcome of the case. *Allen v. Tyson Foods, Inc.* 121 F.3d 642, 646 (11th Cir.1997). It is "genuine" if the record taken as a whole could lead a rational trier of fact to find for the non-moving party. *Id.*

In applying this standard, the district court must view the evidence and all factual inferences therefrom in the light most favorable to the party opposing the motion. *See id.* However, the non-moving party may not rest upon the mere allegations or denials of the adverse party's pleading, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

Fed.R.Civ.P. 56(e). "The mere existence of a scintilla of evidence in support of the [non-movant's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [non-movant]." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

In other words, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). In determining whether this evidentiary threshold has been met, the trial court "must view the evidence pre-

sented through the prism of the substantive evidentiary burden" applicable to the particular cause of action before it. *Anderson*, 477 U.S. at 254, 106 S.Ct. 2505. If the non-movant fails to adduce evidence which would be sufficient, when viewed in a light most favorable to the non-movant, to support a jury finding for the non-movant, summary judgment may be granted. *Id.* at 254–55, 106 S.Ct. 2505.

Additionally, the non-moving party must "make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The failure of proof concerning an essential element of the non-moving party's case necessarily renders all other facts immaterial and requires the court to grant the motion for summary judgment. *See id.*

**Discussion**

Plaintiff asserts that summary judgment is improper because there are a number of "disputed material facts." Specifically, Plaintiff argues that the parties dispute:
(A) whether INS Adjudications Officer Edward Persons conducted a Marriage Interview with Milton and Diana Nelson; (B) whether INS Officer Persons sought or requested another marriage interview after February 25, 1998; (C) whether INS Officer Persons conditionally approved their application for Milton Nelson's permanent residency contingent on the clearing of his fingerprints; (D) whether INS Officer Persons approved Milton Nelson's application for lawful permanent residence on November 12, 1998, after the fingerprints cleared; and (E) whether placing an I–551 stamp in Milton Nelson's passport was an affirmation of the approval of his residency.
The Court rejects the notion that these are disputed *material facts*.

It is undeniable that each of Mr. Nelson's claims rests squarely on whether he was ever granted lawful permanent residence. Moreover, it is equally clear that Mr. Nelson's argument that the INS granted him lawful permanent residence is based wholly on Mr. Persons' placement of the I–551 stamp in Mr. Nelson's passport on November 12, 1998 Accordingly. Plaintiff's first three "disputed material facts" are really not material at all. These issues have no dispositive impact on whether Mr. Nelson's application for lawful permanent residence was ever approved.

Plaintiff's final "disputed material facts": "whether INS Officer Persons approved Milton Nelson's application for lawful permanent residence on November 12, 1998, after the fingerprints cleared" and "whether placing an I–551 stamp in Milton Nelson's passport was an affirmation of the approval of his residency," taken together, are certainly material. Specifically, it is unquestionably material whether Mr. Person's placement of an I–551 stamp in Mr. Nelson's passport on November 12, 1998 served as an approval of Mr. Nelson's application for lawful permanent residence. However, this is not a factual question. Instead, it is a question of law and is therefore properly determined by this Court upon summary judgment.

The government argues that Mr. Persons erroneously stamped Mr. Nelson's passport on November 12, 1998. Mr. Nelson, on the other hand, asserts that the stamp signifies final approval by Mr. Persons and the INS of Mr. Nelson's application for lawful permanent residence. Plaintiff's assertion strains logic and is inconsistent with the law.

■ The process by which Mr. Nelson attempted to gain lawful permanent residence in the United States is known as adjustment. Through this process, an alien already present in this country may adjust his or her status to that of a lawful

permanent resident. Section 245 of the Immigration and Nationality Act ("INA"), codified at 8 U.S.C. § 1255 (2001) provides:

The status of an alien who was inspected and admitted or paroled into the United States may be adjusted by the Attorney General, in his discretion and under such regulations as he may prescribe, to that of an alien lawfully admitted for permanent residence if (1) the alien makes an application for such adjustment, (2) the alien is eligible to receive an immigrant visa and is admissible to the United States for permanent residence, and (3) an immigrant visa is immediately available to him at the time his application is filed.

*See also Howell v. INS,* 72 F.3d 288, 290–91 (2d Cir.1995) (section "1255 allows an alien to apply for permanent residence in the United States rather than requiring him to return to his own country to apply for such status").

■ The government fervently argues that adjustment involves a series of steps.

First, it requires approval of the I–130, then the I–485, and finally, the I–181 Only after these approvals are granted should an applicant receive an I–551 stamp in his or her passport. Furthermore, the INS may exercise discretion in granting an adjustment of status even where each of the noted applications have been approved. *Tomboc v. Rosenberg,* 427 F.2d 677 (9th Cir.1970) (granting alien's application for adjustment of status to permanent resident is within INS' discretion).

Importantly, even Plaintiff argues that "the placing of the I–551 stamp is the last step in the process of according an individual this [lawful permanent resident] status." DE # 29 at page 10. Furthermore, Plaintiff's own expert witness, Stanley Mailman, acknowledged that an adjustment requires approval of the I–130, the I–485, and then the I–181.[1] The I–551 stamp placed in the applicant's passport then serves as the *applicant's* proof to employers and even the INS, in some cases,[2] that

---

1. On March 29, 2001, at a hearing before this Court, Stanley Mailman was properly tendered as an expert witness in the field of immigration law. During his testimony, the following exchange took place between Dexter Lee, Assistant U.S. Attorney and Mr. Mailman:

Q: ... The I–245 adjustment is a means by which an alien already in the United States for a year [gains] the status of a lawful permanent resident; is that correct?

A: Yes.

Q: The I–130 has to be approved; does it not?

A: The I–130 has to be approved, yes. No question about it.

Q: In order for him or her to be adjusted, the I–485 also has to be approved, does it not?

A: Yes.

Q: Now, you are familiar with the Form I–181?

A: Yes.

Q: That's a document called Memorandum of Creation of the Record of Lawful Permanent Residence?

A: Yes.

Q: If an individual has the I–130 approved and the Form I–181 approved—approved, where he basically has become a successful applicant for lawful permanent residency, then the I–181 is also stamped with an approval stampt by the adjustment of status officer?

A: Well, it should be.... These are the things that are supposed to be done in order to reach the final step of approving or granting lawful permanent resident adjustment of status.

Q: What requires both the I–130 be approved, the I–485 to be approved before the individual can lawfully adjust their status?

A: You put it—it's required to be. That is what the officer should be doing....

2. For example, Mr. Nelson used his stamp to reenter the United States after traveling abroad.

he or she is a lawful permanent resident of the United States. While the stamp typically serves as a *record* —in fact, the applicant's only record—of an approval, it is not *an* approval.[3] Thus, it follows that an erroneously placed I–551 stamp does not *create* an approval where no such approval was actually granted.

Plaintiff argues that *Reid* is "directly on point"; the Court disagrees. *Reid v. Immigration & Naturalization Service,* No. 91 Civ. 6535(PNL), 1993 WL 267278, (S.D.N.Y. July 14, 1993). *Reid* is distinguishable where the I–130 filed on behalf of the *Reid* applicant was actually approved. *Id.* at *1 There, the applicant's mother, a lawful permanent resident of the United States, petitioned INS to grant the applicant an immigrant visa based on her status as the unmarried child of the petitioner. *Id.* at *1, *8. The *Reid* applicant subsequently married and the court denied summary judgment where it found that "the sequence of Reid's marriage and the issuance of the INS temporary I–551 stamp on her passport is a material fact in dispute." *Id.* at *8. That Court's analysis is highly relevant here because the *Reid* court noted that the "timing of Reid's marriage with respect to when her passport was stamped is crucial because an alien seeking adjustment of status must demonstrate that she is eligible to receive an immigrant visa at the time her application is acted on." *Id.* at *6. Thus, if the *Reid* applicant was married prior to the placement of the I–551 stamp in her passport, she would not have been eligible to adjust

her status because her visa category was for unmarried sons or daughters of lawful permanent residents. *Id.*

Likewise, because the I–130 petition filed on behalf of Mr. Nelson was indisputably never approved, he was also ineligible for an adjustment of status. *See* 8 C.F.R. § 245.2(a)(2)(i) ("the application [for Permanent Residence, *i.e.,* I–485] will not be considered properly filed unless such [visa] petition [*i.e.,* the I–130] has first been approved"); 8 C.F.R. § 245.2(a)(3)(ii) ("If the *application* [for adjustment of status] *is approved,* the applicant's permanent residence shall be recorded as of the date of the order approving the adjustment of status.") (emphasis added). Importantly, Section 245(a)(5)(ii) does not say "If the applicant's passport is stamped with the I–551 stamp, his or her permanent residence shall be recorded as of the date of the order approving the adjustment of status." Instead, the applicant's *application* must be approved.

Accordingly, where Mr. Nelson misconstrues the legal effect of the I–551 stamp placed in his passport and also fails to show that even one of the necessary applications were approved, *i.e.,* the I–130, the I–485 and the I–181, he fails to "make a showing sufficient to establish the existence of an element essential to [his] case ..." *Celotex Corp.,* 477 U.S. at 322–23, 106 S.Ct. 2548 Specifically, Mr. Nelson fails to establish that he was ever granted lawful permanent residence in the United States.

**3.** If Plaintiff's notion that the stamp alone is *the* approval, then INS could simply track its approvals by the stamps themselves without any need for additional "internal" documentation. However, this would be impossible where the stamps, since they are only *records* of approvals, leave INS' possession with the passports in which they are placed. Moreover, imagine the effect of Plaintiff's rule when one considers the fact that it is possible,

although criminal, to obtain a bogus I–551 stamp. *See Gatchalian v. INS,* 967 F.2d 586, No. 91–70285, 1992 WL 129329 at *1 (9th Cir. June 4, 1992) (noting that the Board of Immigration Appeals concluded that petitioner failed to establish a prima facie case of eligibility for suspension of deportation where petitioner purchased a bogus I–551 stamp which he placed in his passport).

Accordingly, summary judgment should be entered against him.

### CONCLUSION

Based on the foregoing, it is ORDERED AND ADJUDGED that Defendant's Motion for Summary Judgment (DE # 17) be, and the same is hereby, GRANTED.

It is FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion for Leave to File Additional Memorandum is GRANTED *nunc pro tunc*.

It is FURTHER ORDERED AND ADJUDGED that Plaintiff's Motion for Temporary Restraining Order and Preliminary Injunctive Relief (DE # 6) is DENIED AS MOOT.

The Clerk is directed to CLOSE this case.