Mohammad Abbas **HASHIM**, Petitioner,

v.

**IMMIGRATION AND NATURALIZA-TION SERVICE**, Respondent.

No. 856, Docket 90–4125.

United States Court of Appeals, Second Circuit.

Argued Jan. 10, 1991.

Decided June 25, 1991.

Lawrence M. Sands, New York City (Fried, Frank, Harris, Shriver & Jacobson, of counsel), for petitioner.

Diogenes P. Kekatos, New York City (Otto G. Obermaier, U.S. Atty. S.D.N.Y., Marla Alhadeff, Asst. U.S. Atty., of counsel), for respondent.

Arthur C. Helton, New York City (Lawyers' Committee for Human Rights, New York City, Michael W. Galligan, Debevoise & Plimpton, New York City, of counsel), for amicus curiae Lawyers' Committee for Human Rights.

Before WINTER and ALTIMARI, Circuit Judges, and WEXLER, District Judge.*

---

* The Hon. Leonard D. Wexler, United States District Judge for the Eastern District of New York, sitting by designation.

WINTER, Circuit Judge:

This case arises on a petition for review of a decision of the Board of Immigration Appeals ("BIA") denying an award of costs and attorneys' fees sought under the Equal Access to Justice Act ("EAJA"), 5 U.S.C. § 504 (1988) and 28 U.S.C. § 2412 (1988), to a party that had prevailed in an exclusion proceeding conducted under the Immigration and Nationality Act ("INA"), 8 U.S.C. § 1252 (1988).[1] We deny the petition for review. The EAJA is facially inapplicable to deportation actions, and its legislative history does not suggest that Congress intended otherwise.

## BACKGROUND

Mohammad Abbas Hashim is an Iraqi national who, on December 23, 1988, jumped from a ship docked in New York harbor, the *Al–Mutanabbi*, onto a refueling barge and requested assistance in entering the United States. The barge operator turned Hashim over to the United States Coast Guard who then turned him over to the Immigration and Naturalization Service ("INS"). On December 27, 1988, Hashim filed an application for asylum, which was denied. On April 21, 1989, exclusion proceedings were commenced before Immigration Judge Howard I. Cohen. On June 8, 1989, the immigration judge granted Hashim's motion to terminate exclusion proceedings on the ground that he had already entered the United States and was subject only to deportation proceedings. *See supra* Note 1. The INS accepted Immigration Judge Cohen's determination and waived appeal.

After termination of the exclusion proceedings, Hashim moved for an award of attorneys' fees under the EAJA. Relying on the BIA's decision in *Matter of Fede*, Interim Decision No. 3106 (BIA May 11, 1989), the immigration judge held that the EAJA did not allow reimbursement for attorneys' fees in connection with exclusion

proceedings and denied Hashim's application for such an award. On June 26, 1989, Hashim appealed to the BIA, which upheld the denial of fees. Hashim then filed the instant petition for review under 8 U.S.C. § 1105a(a) (1988).

## DISCUSSION

Whether the EAJA authorizes an award of attorneys' fees in exclusion or deportation proceedings has been the subject of numerous decisions in various circuits and requires no extended discussion by us. "The starting point in statutory interpretation is 'the language [of the statute] itself,'" *United States v. James*, 478 U.S. 597, 604, 106 S.Ct. 3116, 3120, 92 L.Ed.2d 483 (1986) (quoting *Blue Chip Stamps v. Manor Drug Stores*, 421 U.S. 723, 756, 95 S.Ct. 1917, 1934, 44 L.Ed.2d 539 (1975) (Powell, J., concurring)); *American Tobacco Co. v. Patterson*, 456 U.S. 63, 68, 102 S.Ct. 1534, 1536, 71 L.Ed.2d 748 (1982); *Watt v. Alaska*, 451 U.S. 259, 265, 101 S.Ct. 1673, 1677, 68 L.Ed.2d 80 (1981); *Reiter v. Sonotone Corp.*, 442 U.S. 330, 337, 99 S.Ct. 2326, 2330, 60 L.Ed.2d 931 (1979), and " ' "the legislative purpose is expressed by the ordinary meaning of the words used" ' " in the statute. *INS v. Phinpathya*, 464 U.S. 183, 189, 104 S.Ct. 584, 589, 78 L.Ed.2d 401 (1984) (quoting *American Tobacco Co. v. Patterson*, 456 U.S. at 68, 102 S.Ct. at 1537 (quoting *Richards v. United States*, 369 U.S. 1, 9, 82 S.Ct. 585, 591, 7 L.Ed.2d 492 (1962))); *accord United States v. Locke*, 471 U.S. 84, 93, 105 S.Ct. 1785, 1791, 85 L.Ed.2d 64 (1985). Ordinarily, statutory language is conclusive absent clear legislative intent to the contrary. *American Tobacco Co. v. Patterson*, 456 U.S. at 68, 102 S.Ct. at 1537 (quoting *Consumer Product Safety Comm'n v. GTE Sylvania, Inc.*, 447 U.S. 102, 108, 100 S.Ct. 2051, 2055, 64 L.Ed.2d 766 (1980)); *accord INS v. Cardoza–Fonseca*, 480 U.S. 421, 432 n. 12, 107 S.Ct. 1207, 1214 n. 12, 94 L.Ed.2d 434 (1987). Only " ' "rare and exceptional

1. Exclusion proceedings are conducted when an alien seeking admission to the United States is not "clearly and beyond doubt entitled to land" to determine whether the alien "shall be allowed to enter or shall be excluded and deported." 8

U.S.C. §§ 1225–26 (1988). When an alien has already made entry into the United States, deportation, rather than exclusion, proceedings are conducted. *See, e.g., Application of Phelisna*, 551 F.Supp. 960, 962 (E.D.N.Y.1982).

circumstances" ' " justify departure from plain statutory language. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 701, 66 L.Ed.2d 633 (1981) (quoting *TVA v. Hill,* 437 U.S. 153, 187 n. 33, 98 S.Ct. 2279, 2298, 57 L.Ed.2d 117 (1978) (quoting *Crooks v. Harrelson,* 282 U.S. 55, 60, 51 S.Ct. 49, 50, 75 L.Ed. 156 (1930))).

On its face, the EAJA seems inapplicable to exclusion or deportation proceedings. In pertinent part, it authorizes the award of attorneys' fees in an "adversary adjudication," 5 U.S.C. § 504(a)(1), which is defined as "an adjudication under section 554 of this title," *id.* § 504(b)(1)(C)(i), in which the position of the United States is represented by counsel or otherwise. 5 U.S.C. § 504(b)(1)(C).[2] A common-sense, straightforward reading of this language suggests that "under section 554" means governed by or in accordance with Section 554 of the Administrative Procedure Act ("APA"), 5 U.S.C. § 554 (1988).

Deportation proceedings, however, are not governed by Section 554 of the APA. The attorney general is authorized by Sections 236 and 242 of the INA to promulgate the "sole and exclusive procedure" for determining the admissibility or deportability of persons under those sections. 8 U.S.C. §§ 1226(a), 1252(b) (1988). Moreover, the Attorney General has promulgated regulations to implement the EAJA, 28 C.F.R. §§ 24.101–.309 (1990), that do not include immigration proceedings determining excludability or deportability.

That Congress deliberately exempted exclusion or deportation proceedings from the APA cannot be disputed. After the Su-

preme Court had extended the APA's reach to deportation proceedings, *see Wong Yang Sung v. McGrath,* 339 U.S. 33, 51–53, 70 S.Ct. 445, 454–55, 94 L.Ed. 616 (1950), Congress enacted Section 242 to nullify the Court's decision. *See* 3 C. Gordon and S. Mailman, *Immigration Law and Procedure* § 5.7a at 5–79 & nn. 4–8 (rev. ed. 1990); *see also* Supplemental Appropriation Act, 1951, Pub.L. No. 81–843, 1950 U.S. Code Cong. & Admin.News 1038, 1042. Subsequently, the Court explicitly held that the APA does not apply to deportation proceedings in *Marcello v. Bonds,* 349 U.S. 302, 75 S.Ct. 757, 99 L.Ed. 1107 *reh. denied,* 350 U.S. 856, 76 S.Ct. 38, 100 L.Ed. 761 (1955). Although *Marcello* noted that the provisions for hearings under the APA and the INA were identical in many respects because the APA served as a model for the INA, *id.* at 307–08, 75 S.Ct. at 760, the Court held that Section 242 of the INA created a procedure outside the APA specifically tailored to deportation proceedings. *Marcello* thus stated:

[I]t is clear that Congress was setting up a specialized administrative procedure applicable to deportation hearings, drawing liberally on the analogous provisions of the Administrative Procedure Act and adapting them to particular needs of the deportation process. The same legislators, Senator McCarran and Congressman Walter, sponsored both the Administrative Procedure Act and the Immigration Act, and the framework of the latter indicates clearly that the Administrative Procedure Act was being used as a model. But it was intended only as a model,

---

**2.** The EAJA states in pertinent part:

An agency that conducts an adversary adjudication shall award, to a prevailing party other than the United States, fees and other expenses incurred by that party in connection with that proceeding, unless the adjudicative officer of the agency finds that the position of the agency was substantially justified or that special circumstances make an award unjust. Whether or not the position of the agency was substantially justified shall be determined on the basis of the administrative record, as a whole, which is made in the adversary adjudication for which fees and other expenses are sought.

5 U.S.C. § 504(a)(1).

Except as otherwise specifically provided by statute, a court shall award to a prevailing party other than the United States fees and other expenses ... incurred by that party in any civil action (other than cases sounding in tort), including proceedings for judicial review of agency action ... unless the court finds that the position of the United States was substantially justified or that special circumstances make an award unjust.

28 U.S.C. § 2412(d)(1)(A) (1988). Both sections direct the court to award fees and expenses to a prevailing party in an adversary adjudication by administrative agencies as authorized by 5 U.S.C. § 504(b)(1)(C).

and when in this very particularized adaptation there was a departure from the Administrative Procedure Act—based on novel features in the deportation process—surely it was the intention of the Congress to have the deviation apply and not the general model.

349 U.S. at 308–09, 75 S.Ct. at 760–61, accord Ho Chong Tsao v. INS, 538 F.2d 667, 669 (5th Cir.1976) (per curiam) (APA not applicable to BIA's review of immigration judge's refusal to revoke order deporting alien), cert. denied, 430 U.S. 906, 97 S.Ct. 1176, 51 L.Ed.2d 582 (1977); Cisternas-Estay v. INS, 531 F.2d 155, 158–59 (3d Cir.), cert. denied, 429 U.S. 853, 97 S.Ct. 145, 50 L.Ed.2d 127 (1976).[3]

Every court, save one, that has addressed the issue, has followed this straightforward analysis. Hodge v. U.S. Dept. of Justice, 929 F.2d 153, 155–58 (5th Cir.1991); Full Gospel Portland Church v. Thornburgh, 927 F.2d 628, 630 (D.C.Cir. 1991) (per curiam); Ardestani v. United States Dept. of Justice, 904 F.2d 1505, 1515, reh. en banc denied, 915 F.2d 698 (11th Cir.1990), cert. granted — U.S. ——, 111 S.Ct. 1101, 113 L.Ed.2d 212 (1991); Clarke v. INS, 904 F.2d 172, 178 (3d Cir. 1990); Owens v. Brock, 860 F.2d 1363, 1366 (6th Cir.1988); see also Smedberg Machine & Tool, Inc. v. Donovan, 730 F.2d 1089, 1092–93 (7th Cir.1984) (per curiam) (rejecting expansive reading of "adjudication under section 554" clause of 5 U.S.C. § 504(b)(1)(C)(i)).

In Escobar Ruiz v. INS, 838 F.2d 1020, 1025 (9th Cir.1988) (en banc), however, the Ninth Circuit found the phrase "under section 554" to be ambiguous and to mean either "governed by" or "defined by." Id. at 1023. Believing these phrases to connote very different meanings, the Escobar Ruiz court then looked to the EAJA's legislative history and noted that the House Conference Report accompanying the origi-

nal EAJA had described an "adversary adjudication as an agency adjudication defined under the [APA] where the agency takes a position through representation by counsel or otherwise." H.R.Conf.Rep. No. 1434, 96th Cong., 2d Sess. 23, reprinted in 1980 U.S.Code Cong. & Admin.News 5003, 5012 (quoted in Escobar Ruiz v. INS, 838 F.2d at 1023). Because the APA defines "adjudication" as that which is "required by statute to be determined on the record after opportunity for an agency hearing," 5 U.S.C. § 554(a), the Ninth Circuit concluded that it had to examine "the procedures by which deportation hearings are actually conducted, rather than determin[e] whether such hearings are technically governed by the APA." Escobar Ruiz v. INS, 838 F.2d at 1023. Noting also that Congress contemplated that the EAJA would apply to certain Social Security proceedings not governed by the APA, the Ninth Circuit held that exclusion and deportation proceedings are "adversary adjudications" within the meaning of the EAJA. See id. at 1022–27.

We agree with the weight of authority. First, we do not find the statute to be ambiguous. Second, we believe that if Congress intended to have the applicability of the EAJA turn on the general characteristics of various proceedings, it would have described those characteristics in the EAJA rather than seek to accomplish that end by a confusing reference to the APA. Third, the legislative history cited in Escobar Ruiz seems little more than an ambiguous snippet. Finally, although the Ninth Circuit was correct in asserting that the legislative history indicates that Social Security proceedings in which the government is represented by counsel are covered by the EAJA, id. at 1026–27, the legislative history of the EAJA relating to Social Security proceedings is simply not on point. The Ninth Circuit conceded in Escobar Ruiz that it is unclear whether Social Security proceedings are governed by the APA. Id. at 1026; see also Richardson v. Perales,

---

3. We did suggest in Oguachuba v. INS, 706 F.2d 93, 98 (2d Cir.1983), a habeas corpus proceeding, that an alien might recover attorneys' fees under the EAJA as a prevailing party against the INS in a civil action. We noted that Congress has defined "civil action" broadly, specifically exempting "cases sounding in tort," and "includ-

ing proceedings for judicial review of agency action." See 28 U.S.C. § 2412(d)(1)(A). We did not address, however, the applicability of the EAJA to exclusion or deportation proceedings. Oguachuba, therefore, in no way forecloses the present ruling.

402 U.S. 389, 91 S.Ct. 1420, 28 L.Ed.2d 842 (1971). If such proceedings are governed by the APA, then the EAJA applies by force of its very language. The applicability of the APA to Social Security proceedings has never been authoritatively resolved, however, and may remain forever in doubt, because "Social Security administrative procedure does not vary from that prescribed by the APA." *Richardson,* 402 U.S. at 409, 91 S.Ct. at 1431.

Moreover, Congress has amended the EAJA explicitly to include certain previously uncovered administrative actions but has failed to include deportation proceedings. *See* H.R.Rep. No. 120, pt. I, 99th Cong., 1st Sess. 10, *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 138. In 1985, Congress expanded the definition of "adversary adjudication" to include any appeal of a decision made under Section 6 of the Contract Disputes Act of 1978, an amendment intended to overrule the Federal Circuit's holding in *Fidelity Construction Co. v. United States,* 700 F.2d 1379 (Fed.Cir. 1983), that the EAJA was inapplicable to these decisions. Equal Access to Justice Act, Extension and Amendment, Pub.L. No. 99–80, § 1(c)(2)(B) (extending application of the term "adversary adjudication" in 5 U.S.C. § 504(b)(1)(C)); *see also* H.R. Rep. No. 120, 99th Cong., 1st Sess., pt. 1, at 15 (1985), *reprinted in* 1985 U.S.Code Cong. & Admin.News 132, 144. In 1986, Congress amended the EAJA to include hearings conducted under chapter 38 of title 31, Administrative Remedies and False Claims and Statements. Pub.L. No. 99–509, § 6103(c) (additional extension of application of term "adversary adjudication" in 5 U.S.C. § 504(b)(1)(C)).

These amendments are instructive. First, Congress has not thought it necessary to pass such an amendment regarding Social Security proceedings. That failure may well reflect Congress's belief that the APA, and thus the EAJA, applies to such proceedings. Second, by reenacting and amending the EAJA without altering its applicability to immigration proceedings, Congress appears to have ratified the Attorney General's regulations implementing the EAJA which do not include exclusion or deportation proceedings. 28 C.F.R. §§ 24.-

102(b), 24.103(a) (1990). *See Lorillard v. Pons,* 434 U.S. 575, 581, 98 S.Ct. 866, 55 L.Ed.2d 40 (1978); *NLRB v. Gullett Gin Co.,* 340 U.S. 361, 366, 71 S.Ct. 337, 340, 95 L.Ed. 337 (1951); *Trichilo v. Secretary of Health and Human Services,* 823 F.2d 702, 706 (2d Cir.1987). Even if an inference of ratification seems a reach, the failure to amend the EAJA to include such proceedings adds to the legislative record reflecting Congress's intent to exclude them.

Finally, Congress's continued retention of Section 292 of the INA which provides that "[i]n any exclusion or deportation proceedings ... the person concerned shall have the privilege of being represented (at no expense to the Government)," despite subsequent amendments and the enactment of the EAJA, demonstrates Congress's intent that the government not be liable for attorneys' fees in deportation and exclusion proceedings. 8 U.S.C. § 1362 (1988).

We thus agree with the Third Circuit that, although awarding attorneys' fees in exclusion hearings may advance the purposes underlying the EAJA, it is the "province of Congress, not the courts, to rewrite the statute to include proceedings that are not clearly within its scope." *Clarke v. INS,* 904 F.2d at 178.

The petition is denied.