Peter Andrew RUSTON, Philip Ruston,
and Worldmaster, Inc., Plaintiffs,

v.

U.S. DEPARTMENT OF STATE; Madeline Albright, in her official capacity as Secretary of State; Immigration and Naturalization Service; and Doris Meissner, in her official capacity as Commissioner of the Immigration and Naturalization Service, Defendants.

No. LR–C–97–555.

United States District Court,
E.D. Arkansas,
Western Division.

Oct. 19, 1998.

Roger C. Linde, Milling, Benson, Woodward, Hillyer, Pierson & Miller, New Orleans, LA, Robert M. Honea, Dawson & Terry, Fort Smith, AR, for Plaintiffs.

Alison Marie Igoe, U.S. Dept. of Justice, Office of Immigration Litigation, Washington, DC, Gwendolyn Dewees Hodge and Richard M. Pence, Jr., U.S. Attorney's Office, Eastern District of Arkansas, Little Rock, AR, for Defendants.

## MEMORANDUM OPINION AND ORDER

SUSAN WEBBER WRIGHT, Chief Judge.

This is an immigration case. The plaintiffs (Peter and Philip Ruston and Worldmaster, Inc.) seek, among other things, injunctive relief requiring the defendants, the Department of State ("State Department") and the Immigration and Naturalization Service ("INS"), to rescind revocation of the Rustons' visas and issue new visas. Additionally, the plaintiffs seek attorney fees and other ex-

penses under the Equal Access to Justice Act. The defendants filed a motion requesting dismissal for lack of subject matter jurisdiction [Docket No. 13] and the plaintiffs have responded [Docket Nos. 23, 27, 30]. The motion is ripe for review. After careful review, the Court finds that it lacks subject matter jurisdiction to hear this case and grants the defendants' motion to dismiss.

While the Court may consider matters outside the pleadings when considering a 12(b)(1) motion to dismiss, in this case, the Court will decide the issue of subject matter jurisdiction solely from the face of the plaintiffs' pleadings. *See Osborn v. United States,* 918 F.2d 724 (8th Cir.1990).

## I. FACTUAL BACKGROUND

On December 16, 1996, Peter Ruston, an Australian, attempted to enter the United States. At a New York airport, INS officials informed him of exclusion proceedings against him and served him with notice to appear before an immigration judge on May 7, 1997. The INS officials informed Ruston that the exclusion proceedings had been initiated because he did not possess a valid visa, he obtained a visa by fraudulent methods, and he engaged in alien smuggling. This information took Ruston by surprise; he asserts that he has never misrepresented facts when applying for visas and that he has never smuggled aliens into the United States.

Ruston entered the United States on previous occasions, without incident, pursuant to a B–1 visa[1] issued by the American Consulate in Melbourne, Australia. He assumed that this visa was still in effect when he arrived at the airport on December 16th. Later he learned that the State Department had revoked the visa in May of 1996.

On his previous visits to the United States (pursuant to his then-active B–1 visa) Ruston conducted business for Worldmaster, Inc., an enterprise that created a training program for truck drivers. According to Ruston, the trucking industry in Australia needed improvement, and Worldmaster sought to gain

---

**1.** An alien is eligible for a B–1 visa if he has a residence in a foreign country and comes to the United States temporarily for business. *See* 8 U.S.C. § 1101(a)(15)(B).

American trucking industry know-how by sending Australian trainees to the United States. In order to accomplish the training program, Ruston applied for H–3 visas for Worldmaster trainees at the INS Service Center in Irving, Texas. The Texas Service Center approved the applications. However, the Melbourne Consulate, without explanation, withdrew approval of the H–3 visas. Ruston made numerous efforts, including freedom of information inquiries, to learn why the Consulate revoked his B–1 visa and refused to issue Worldmaster trainees H–3 visas, but his efforts proved fruitless.

Ruston appeared for the scheduled exclusion hearing at the United States Immigration Court in New York on May 7, 1997. However, the hearing did not proceed because the INS had not informed the Immigration Court about the hearing. Also in May, the State Department revoked Philip Ruston's visa without warning. Philip Ruston is the son of Peter Ruston and an employee of Worldmaster.

Despite the revocation of Ruston's B–1 visa and the pending exclusion proceedings against him, Worldmaster filed a petition seeking L–1 status[2] for Ruston. The petition for L–1 status was approved in June of 1997. During a scheduling hearing pursuant to the exclusion proceedings against Ruston; the INS learned that he had been approved for L–1 status. Consequently, the INS issued a notice of intent to revoke his L–1 status and, thereafter, a notice of revocation of L–1 status. Ruston has appealed revocation of his L–1 status to the Board of Immigration Appeals; the appeal is currently pending.

In December, 1997, the exclusion hearing, previously set for May, took place. At the hearing, Ruston informed the Court that the INS had issued him L–1 status. As a result, the court terminated the proceedings with prejudice "by agreement of the parties as the applicant was admitted as a B–1 nonimmigrant whose status was changed to L–1 classification by the [INS]."

The plaintiffs seek several remedies. First, they seek a writ of mandamus or mandatory injunction ordering the defendants to rescind revocation of the Rustons' B–1 visas and to declare the revoked visas valid. Second, they seek a mandatory injunction ordering the defendants to delete data base entries which would prevent the success of future applications made by the Rustons. Third, they seek a mandatory injunction ordering the State Department to cease all actions against the them and to comply with the notice requirements set forth in 22 C.F.R. § 41.122(b) in any future actions against the Rustons. Fourth, they seek rescission of revocation of Peter Ruston's L–1 status. Fifth they seek a declaratory judgment that the exclusion proceedings against Peter Ruston were improperly initiated and that the revocation of the Rustons' B–1 visas and Peter Ruston's L–1 status was improper. Sixth, they seek attorney fees and costs under the Equal Access to Justice Act.

## II. STATUTORY BACKGROUND

The Immigration and Nationality Act of 1952 ("INA"), though modified over the years, remains the United States' primary immigration law. The Act charges the Attorney General with the administration and enforcement of immigration and naturalization laws, except for matters within the jurisdiction of the President and the Secretary of State.[3] The Attorney General delegates administrative functions to the Commissioner of the Immigration and Naturalization Service ("INS").[4] The Commissioner of the INS, in turn, delegates authority to officers of the INS. Thus, an official act of the INS carries the authority of the Attorney General.

The INA charges the Secretary of State with the administration and enforcement of the powers and duties of consular officers of the United States, except those powers and duties conferred upon consular officers relat-

---

**2.** L–1 status is available to employees of foreign firms wishing to employ the L–1 applicant temporarily in the United States. *See* 8 U.S.C. § 1101(a)(15)(L).

**3.** *See* 8 U.S.C. § 1103.

**4.** *See* 8 C.F.R. § 2.1.

ing to granting or refusing visas.[5] United States Consuls in foreign countries possess broad discretion to grant, deny, and revoke visas.[6]

Until 1996, under the INA, the words "deportation," "exclusion," and "entry" had all-important meanings. Illegal aliens who had entered the country, or who had been paroled into the country, were subject to deportation procedures; and those who had not entered were subject to exclusion procedures. Judicial review for the two procedures differed. Deportation orders were appealable to United States Courts of Appeals, while exclusion orders were appealable only to the United States District Courts by writ of habeas corpus.[7]

In 1996, Congress passed the Illegal Immigration Reform and Immigrant Responsibility Act ("IIRIRA") and eliminated the terms deportation and exclusion by replacing them with a single term and a single procedure: removal.[8] Most important to this case, the IIRIRA revamped judicial review for immigration proceedings. The Act provides United States Courts of Appeals exclusive jurisdiction to review final orders of removal.[9] Additionally, a court of appeal "may review a final order of removal only if ... the alien has exhausted all administrative remedies available to the alien as of right." [10]

Generally, the IIRIRA's judicial review amendments became effective April 1, 1997.[11] However, the Act provided transitional rules governing judicial review of cases pending as of April 1, 1997.[12] The Act breaks these cases into two classes. The first class includes cases pending on April 1, 1997; where final orders of exclusion had been entered before October 30, 1996. For this class, the Act applies the "old" INA judicial review

rules. The second classification includes cases pending on April 1, 1997; where final orders of exclusion had been entered on or after October 30, 1996. For this class, the Act applies "transitional" judicial review rules. As for cases initiated after April 1, 1997, the "new" IIRIRA judicial review rules apply. Finally, the IIRIRA provides:

> Except as provided in this section and notwithstanding any other provision of law, no court shall have jurisdiction to hear any cause or claim by or on behalf of any alien arising from the decision or action by the Attorney General to ·commence proceedings, adjudicate cases, or execute removal orders against any alien under this chapter.[13]

This provision applies "without limitation to claims arising from all past, pending, or future exclusion, deportation, or removal proceedings ...." [14]

## III. DISCUSSION

The plaintiffs propose that this Court possesses subject matter jurisdiction to hear their claims under 28 U.S.C. § 1331; 8 U.S.C. § 1329; 28 U.S.C. 1361; and 28 U.S.C. § 2201. Additionally, the plaintiffs seeks an award of attorney fees and costs under the Equal Access to Justice Act. The Court will address the question of subject matter jurisdiction under each of the proposed statutes.

### A. 28 U.S.C. § 1331

Under 28 U.S.C. § 1331, this Court has original subject matter jurisdiction over actions arising under the Constitution, laws, and treaties of the United States. Additionally, the Supreme Court has interpreted § 1331 to confer judicial review over agency

---

**5.** *See* 8 U.S.C. § 1104.

**6.** *See* 8 U.S.C. §§ 1201(a), 1201(i).

**7.** *See* 8 U.S.C. § 1105 (1994) (repealed 1996).

**8.** *See* IIRIRA § 304 (codified at 8 U.S.C. § 1229) (merging deportation, removal, and exclusion proceedings into a category called "removal proceedings").

**9.** See 8 U.S.C. § 1252(b)(2).

**10.** 8 U.S.C. § 1252(d)(1).

**11.** *See* IIRIRA § 309(a).

**12.** *See* IIRIRA § 309(c)(4). This IIRIRA section is titled "Transitional Changes in Judicial Review" and is not codified in the United ·States Code.

**13.** IIRIRA § 242(g) (codified at 8 U.S.C. § 1252(g)).

**14.** IIRIRA § 306(c).

action "subject only to preclusion-of-review statutes created or retained by Congress." *Califano v. Sanders*, 430 U.S. 99, 105, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Thus, the crucial question in this case is whether the judicial review provisions of the IIRIRA preclude this Court from hearing the present case. After careful consideration, the Court finds that it does.

The plaintiffs argue that this case is not about removal proceedings, but about the State Department not following its own rules. The plaintiffs contend that if the Court would tie the issues presented into "one neat package" they would not have to defend on numerous administrative sites simultaneously and the interest of government efficiency would be served. However, Congress has plenary power to delineate the jurisdictional limits of federal courts and this Court cannot ignore immigration statutes in order to provide one convenient forum to resolve the plaintiffs' claims. Accordingly, the Court will .determine whether the IIRIRA precludes judicial review of the plaintiffs' specific claims. Those claims involve (1) the exclusion proceedings against Peter Ruston, (2) the revocation of Peter Ruston's L–1 status, and (3) the State Department's revocation of Peter and Phillip Ruston's B–1 visas.

## 1. Exclusion Proceedings

■ IIRIRA § 242(g) bars this Court from reviewing the Attorney General's decision to initiate exclusion proceedings against Peter Ruston. Additionally, the IIRIRA precludes this Court from reviewing a final order of exclusion. An immigration judge terminated the exclusion proceedings against Peter Ruston on December 3, 1997, and that termination comprised a final order of exclusion. Because the termination order was issued after October 1, 1996, the IIRIRA's transitional rules apply. The transitional rules replace the former review available in federal district court with petition to a court of appeals.[15] Thus, this Court lacks subject matter jurisdiction to review the exclusion proceedings against Ruston.

**15.** IIRIRA § 309(c)(4)(G).

## 2. Revocation of L–1 Status

■ The INS initiated revocation of Peter Ruston's L–1 status on September 23, 1997 and revoked his status on October 29, 1997. Ruston appealed the revocation on November 25, 1997 and that appeal is currently pending. · The doctrine of exhaustion of administrative remedies prevents this Court from reviewing revocation of Ruston's L–1 status.

■ Exhaustion of administrative remedies serves multiple goals; agencies have an opportunity to correct their errors and compile a record adequate for judicial review and parties and the courts have the benefit of agency experience and expertise. *See Schoolcraft v. Sullivan*, 971 F.2d 81, 87 (8th Cir.1992) (quoting *Weinberger v. Salfi*, 422 U.S. 749, 765, 95 S.Ct. 2457, 45 L.Ed.2d 522 (1975)). Here, the plaintiffs contend that exhaustion would be futile, noting that the Consulate in Melbourne will not consider Mr. Ruston's visa petitions. The Consulate's refusal to proceed with Ruston's petitions at the present time does render Ruston's appeal a futile endeavor.

## 3. Revocation of B–1 visas

The plaintiffs maintain that this Court has jurisdiction because the Melbourne Consulate and State Department did not follow their own rules when they failed to notify Ruston of their intent to revoke his B–1 visa. Under 22 C.F.R. § 41.122(b), a consular office is required, *if practicable*, to notify an alien to whom a visa was issued of intention to revoke the visa.[16] Ruston alleges that the consular officer in Melbourne had multiple opportunities to inform him of impending revocation of his B–1 visa. Additionally, he claims that the consul's failure to give notice denied him the opportunity to prevent the revocation of his visa.

■ Decisions of United States Consular Officers to grant or deny visas are discretionary and not subject to administrative appeal or judicial review. *See Patel v. Reno*, 134 F.3d 929, 931 (9th Cir.1997). However,

**16.** 22 C.F.R. § 41.122(b) (emphasis added).

courts have found the doctrine of "consular nonreviewability" inapplicable when consular officers fail to follow nondiscretionary regulatory duties. In *Patel v. Reno,* a consulate failed (for eight years) to take action on the plaintiffs' visa applications. *See id.* The plaintiffs brought suit in federal district court seeking mandamus relief. The court found that the plaintiffs challenged the consul's authority to suspend visa applications for eight years, not the discretionary decision of whether to issue the visas. *See id.* 134 F.3d at 932. Additionally, the court found that a "consular officer is required by law to act on visa applications." *Id.* However, recognizing that only consular officials could issue visas, the court did not order the State Department to issue the visas. Instead, the court ordered the district court below to order the consulate to either grant or deny the visas. *See Id.* 134 F.3d at 933.

 In this case, the notice requirement under 22 C.F.R. § 41.122(b) does not strictly mandate notice of intent to revoke visas but, instead, requires such notice "if practicable." Even if this Court were to find that 22 C.F.R. § 41.122(b) constituted a nondiscretionary duty and that notice was practicable in this case, the Court could not grant the remedy the plaintiffs request. The plaintiffs ask this Court to order the rescission of revocation of the Rustons' visas. If the Court granted such a remedy, it would, in effect, claim for itself the power to issue visas. Only consular officers may issue visas.

 The doctrine of separation of powers also bars this Court from reviewing the consulate's decision not to give Ruston notice that it intended to revoke his visa. To entertain this case on the basis of 22 C.F.R. § 41.122(b) would ignore the streamlined judicial review scheme set out in the IIRIRA. The Supreme Court has stated: "The responsibility for regulating the relationship between the United States and our alien visitors has been committed to the political branches [as opposed to the judicial branch] of the Federal Government. Over no conceivable subject is the legislative power of Congress more complete." *Reno v. Flores,* 507 U.S. 292, 305, 113 S.Ct. 1439, 123 L.Ed.2d 1 (1993). This Court should not override Congress's clear intent to give courts of appeals exclusive jurisdiction over final orders of removal unless it finds that the Melbourne Consulate clearly failed to perform a nondiscretionary duty. Such is not the case in the present litigation.

## B. 8 U.S.C. § 1329

 Under 8 U.S.C. § 1329, federal district courts have subject matter jurisdiction arising under federal immigration laws in cases brought by the United States. The IIRIRA amended § 1329 by stating, "Nothing in this section shall be construed as providing jurisdiction for suits against the United States or its agents and officers." The amendment applies to all actions filed after September 30, 1996. *See* Illegal Immigration Reform and Immigrant Responsibility Act of 1996, Pub.L. No. 104-208, § 381(b). Mr. Ruston filed his complaint in this case, thus commencing this action, on July 2, 1997. Accordingly, 8 U.S.C. § 1329 does not provide the Court subject matter jurisdiction to hear this case.

## C. 28 U.S.C. § 1361

 The federal mandamus statute, 28 U.S.C. § 1361, gives district courts power to compel officers of the United States to perform a duty owed to the plaintiff if the duty is clear, certain, and nondiscretionary. *See Hatcher v. Heckler,* 772 F.2d 427, 432 (8th Cir.1985) (citing *Heckler v. Ringer,* 466 U.S. 602, 104 S.Ct. 2013, 80 L.Ed.2d 622 (1984)). Granting, denying, and revoking visas are discretionary duties.

Additionally, "the writ of mandamus is intended to provide a remedy for a plaintiff only if he has exhausted all other avenues of relief." *Id.* In this case, the plaintiffs have appealed revocation of Peter Ruston's L-1 status and the matter is currently pending. Thus, the plaintiffs have not exhausted their administrative remedies.

## D. 28 U.S.C. § 2201

 Without question, the Declaratory Judgment Act, codified at 28 U.S.C. § 2201, is a remedial statute that does not confer subject matter jurisdiction. *See Missouri v. Cuffley,* 112 F.3d 1332, 1334 (8th Cir.1997).

Accordingly, the plaintiffs cannot base subject matter jurisdiction on 28 U.S.C. § 2201.

### E. Equal Access to Justice Act

The Equal Access to Justice Act (EAJA) provides attorney fees and costs to parties who prevail over the federal government in covered litigation, unless the government can demonstrate that its position was substantially justified or that special circumstances would make an award unjust.[17] "Covered litigation" under the EAJA includes adversarial administrative proceedings governed by the formal adjudication requirements set out in § 554 of the Administrative Procedures Act ("APA")[18] and civil court actions.[19]

■ In the present case, the plaintiffs assert they were the prevailing parties in an adversarial administrative adjudication (INS exclusion proceedings against Ruston) because an immigration judge terminated the proceedings. On the basis of the termination, the plaintiffs claim that this Court should award them attorney fees and costs under the EAJA. The Court respectfully disagrees.

The EAJA applies to adversarial administrative proceedings that are "governed by" or "subject to" § 554 of the APA, which sets out requirements for formal administrative adjudications. *See Lane v. United States Dep't of Agric.*, 120 F.3d 106, 108 (8th Cir. 1997). In *Ardestani v. INS*, the United States Supreme Court held that "immigration proceedings do not fall 'under section 554' and therefore are wholly outside the scope of the EAJA . . . ." *Ardestani v. INS*, 502 U.S. 129, 112 S.Ct. 515, 520, 116 L.Ed.2d 496 (1991); *Lane*, 120 F.3d at 110. The *Ardestani* Court found that Congress had expressly excluded immigration proceedings from § 554 of the APA. *Lane*, 120 F.3d at

110. "Immigration proceedings" include exclusion proceedings.[20] Because the plaintiffs in this case base their EAJA claim on the termination of INS exclusion proceedings, the holding in *Ardestani* precludes this Court from entertaining their claim.

The Supreme Court has, however, sanctioned the award of attorney fees and costs under the EAJA when parties prevail in civil suits brought to challenge INS practices. In 1981, Haitian refugees brought a civil action challenging INS policies of conducting mass exclusion hearings, detaining the refugees during pendency of their applications for asylum, and denying their applications for parole. *See Commissioner, INS v. Jean*, 496 U.S. 154, 110 S.Ct. 2316, 110 L.Ed.2d 134 (1990). After prevailing in the underlying civil action, the plaintiffs moved for an award of attorney fees and costs under the EAJA; the district court granted the award and Supreme Court affirmed the district court's decision. *See id.* But in the present case, the plaintiffs' EAJA claim does not rest on prevailing in a civil suit against the INS, and the Court's holding in *Jean* is inapplicable.

The plaintiffs cite *Shu Chen v. Slattery*, 842 F.Supp. 597 (D.D.C.1994) for the proposition that they have prevailed in the present civil suit; and, therefore, are entitled to an award under the EAJA. In *Shu Chen*, the plaintiff filed a civil suit claiming that the INS failed to process his application for an employment authorization document ("EAD"). Less than a month after he filed suit, the INS granted his EAD. Consequently, the plaintiff moved for an EAJA award on grounds that he was a prevailing party and that it was more probable than not the government would not have issued the EAD absent his lawsuit. The United States Dis-

---

17. *See* 5 U.S.C. § 504, 28 U.S.C. § 2412.

18. *See* 5 U.S.C. § 504(b)(1)(C)(i).

19. *See* 28 U.S.C. § 2412.

20. In *Ardestani,* the Court referred only to deportation proceedings. However, this Court interprets the holding in *Ardestani* to include exclusion proceedings. The *Ardestani* Court noted, "Five other Courts of Appeals agree with the court below that EAJA does not apply to administrative deportation proceedings." *Ardestani,* 502

U.S. 129, 112 S.Ct. at 518 n. 1. The Court cited *Hashim v. INS*, 936 F.2d 711 (2d Cir.1991) as one of the five Courts of Appeals holding that the EAJA did not apply to deportation proceedings. *Id.* In *Hashim,* the plaintiff sought EAJA attorney fees after prevailing on his motion to terminate exclusion proceedings. *See Hashim,* 936 F.2d at 712. The *Hashim* Court held that the EAJA did not apply to deportation *or* exclusion proceedings. *Id.*

trict Court for the District of Columbia agreed with the plaintiff and ordered the INS to pay his attorney fees and costs pursuant to the EAJA.

The plaintiffs compare themselves to the plaintiff in *Shu Chen* by claiming that the INS would never have terminated the exclusion proceedings absent this civil suit. However, the Court in *Shu Chen* found that the plaintiff prevailed in his civil suit because the INS granted exactly what the plaintiff sought, an EAD. In this case, the plaintiffs seek visas for Peter and Philip Ruston and/or L-1 status for Peter Ruston. The INS has declined to grant either. Presently, the Rustons do not possess B-1 visas and the issue of Peter Ruston's L-1 status is the subject of a pending administrative proceeding.[21]

This Court concludes that the EAJA does not apply in this case. Additionally, the Court concludes that it lacks subject matter jurisdiction to hear this case and hereby grants the defendants' 12(b)(1) motion to dismiss.

## IV. CONCLUSION

The Court hereby grants the defendants' motion to dismiss for lack of subject matter jurisdiction [Docket No. 13]. This decision renders several pending motions moot. First, the plaintiffs filed motions to strike the defendants' exhibits. The Court did not consider the objected-to exhibits in deciding the question of subject matter jurisdiction and hereby denies as moot the plaintiffs' motions to strike [Docket Nos. 21 & 34]. Second, the defendants filed a motion to amend their motion to dismiss and the Court hereby denies that motion as moot [Docket No. 26]. Third, the plaintiffs filed a motion for partial summary judgment regarding their claim under the EAJA. Having concluded that this Court lacks jurisdiction to make an award under the EAJA, the Court hereby denies the motion for summary judgment as moot [Docket No. 38]. Fourth, the defendants filed a motion for an extension of time in which to file a response to the plaintiffs'

motion for summary judgment. The Court denies that motion as moot [Docket No. 43].